# ATLANTIC COAST LINE RAILROAD COMPANY *v.* NASH LOAN COMPANY *et al.*

No. 10205. JUNE 14, 1934.

*Abrahams, Bouhan, Atkinson & Lawrence* and *F. R. Youngblood,* for plaintiff in error.

*O'Neal & O'Neal* and *Hester & Clark,* contra.

GILBERT, J. Nash Loan Company brought suit against the Atlantic Coast Line Railroad Company, to recover the amount of wages due to an employee of that company and duly assigned to the petitioner. In a demurrer to the petition the company contended that the legislative act which purports to make lawful a partial assignment of wages and salaries is void, because in conflict with an existing law (Code of 1910, § 3465), which provides: "Any contract made after August 15th, 1904, for the assignment or pledge of any unearned wages or salary, for the purpose of securing a loan of money, shall be void." It was also contended that the portion of the act applicable to the present suit on the assignment of unearned wages is void, because in conflict with designated portions of the constitution. The parts of the constitution are duly set out and described, and the reasons for such contentions are duly stated. It was further contended that the assignment was invalid as to the company, because the notice of such assignment required under sections 16 and 20 of the act approved August 17, 1920 (Ga. Laws 1920, pp. 220, 222, sec. 16, 20), was not given, in that the assignment was not served upon the company "within five days from the time of the execution of the assignment." The company also contends that the assignment is void because it is an interference with the interstate-commerce clause of the Federal constitution. The court overruled the demurrers, and the exception is to that judgment.

The court erred in overruling the demurrer based on the ground that notice of the assignment was not duly served upon the employer. Section 16 of the act provides for service of the assignment on the employer, and that the liability of the employer begins at the time of such service. Section 20 provides: "Before *any notice* of assignment or purchase of wages or salaries shall be binding upon any individual, firm, or corporation to whom said notice is directed, said notice shall be accompanied by a copy of the sale or assignment, verified by the assignee to be a true and correct copy thereof. Provided, that the assignee shall file said notice *within five days* from the time of the execution of the assignment." This in terms applies to "any notice of assignment or purchase of wages or salaries." It provides that before any notice of assignment shall be binding the assignee shall file said notice within five days from the execution of the assignment. It appears from the allegations

of the petition that the loan was made on August 4, 1931; that default in the payments on the loan occurred on September 16, 1931; that on April 21, 1933, the assignee served notice on the railroad company, with verified copy of the assignment. The burden is upon the loan company to show that it fully complied with all the terms of the loan act of 1920. The act is humanitarian in its purposes, and is intended to protect those in need and hard pressed for the use of small sums of money. With that object in view, and under the State's sovereign police power, the legislature undertook to regulate strictly the business of lending money in sums of less than three hundred dollars. On the other hand, such money-lenders are allowed to charge and receive more than eight per cent. per annum, to wit, 3-1/2 per cent. per month. Under these circumstances the act will be liberally construed in favor of the borrower. So construed, the act provides that in no case, unless the loan is constracted simultaneously with the execution of the assignment papers, nor unless the contract is verified by the oath of the lender or his agent and a copy served on the employer, within five days, shall the assignment be valid and enforceable. Section 20. Upon receipt of the notice and verified copy of the assignment as required by the act, the employer to whom they are delivered shall hold the wages assigned for the benefit of the lender. Defendant in error insists that sections 16 and 20 apply to different types of assignments, as follows: "1. By section 16, to provide for a partial assignment of future wages as security for a loan, payable 10% of such wages each month, after service. 2. By section 20, to provide for an assignment to be made in order that a lump sum loaned or purchased be paid at one time, out of the wages earned at the date of the assignment." As we construe the sections they are not in conflict, but section 20 does apply to loans made under section 16. Section 16 in terms refers to assignments of or orders for the payment of any salary or wages earned or to be earned, given to secure any loan. Section 20 refers to any notice of *assignment* or purchase of wages or salaries; therefore section 20 does add a further requirement with which the lender must comply before his assignment is enforceable. The statute was intended to protect, not to destroy, the weak. We do not construe the act as permitting the assignee of unearned wages to arbitrarily withhold notice of the assignment from the employer, and thus to cause

it to become effective whenever the assignee desires. To so hold is to render the assignor completely within the power of the assignee, with respect to the use of his wages, so long as the assignee chooses to withhold notice. The wages or salary earned could not, under the construction of the defendant in error, in good conscience be assigned to another lender so long as a previous assignment was outstanding and notice withheld from the employer. Such a construction would defeat the very object of the legislation. Therefore the requirement of notice to the employer within five days is applicable in the case of all assignments of wages or salaries for purposes covered by the act.

The second headnote does not require elaboration.

*Judgment reversed. All the Justices concur.*